IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

LARRY DALE McCOY,                      :

    Petitioner,                         :

vs.                                    : CIVIL ACTION NO. 12-0399-WS-C

UNITED STATES OF AMERICA,              : CRIMINAL ACTION NO. 09-0152-WS

    Respondent.                         :

## REPORT AND RECOMMENDATION

This cause is before the Court on petitioner Larry Dale McCoy's amended motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 121; *compare id. with* Docs. 97 & 99).[1] This action has been referred to the undersigned for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Following consideration of all relevant pleadings in this case, and the testimony taken during the March 19, 2013 evidentiary hearing, it is recommended that McCoy's § 2255 motion, as amended, be **DENIED**.

## FINDINGS OF FACT

On December 30, 2009, McCoy was charged, by a superseding 11-count

---

[1]     As set forth in the amended petition, and confirmed during the evidentiary hearing, McCoy has **ABANDONED** all claims of judicial misconduct set forth in Ground Two of his original petition (*see* Doc. 97, at 5; *compare id. with* Doc. 99, at 10-11) and all claims of ineffective assistance of counsel set forth in his supplement to his original petition (*see* Doc. 99, at 2 (McCoy alleged that his trial counsel was deficient in: (1) failing to put forth the affirmative defense of entrapment; (2) failing to put on available testimony to rebut the government's § 3553(a) witness; (3) failing to object to the PSI and the trial court's wholesale adoption of the PSI; and (4) failing to request that the jury be instructed on the lesser-included offense of knowingly violating § 922(b)(5)), save for the claim relating to the wayward juror (*see id.; compare id. with* Doc. 121, at 1-3).

indictment, with sale and delivery of firearms without making required records, making false entry in records by federally licensed dealer, and sale or transfer of a firearm to a prohibited person, in violation of 18 U.S.C. §§ 922(b)(5), 922(m), and 922(d)(1). (Doc. 33, at 1-7.) McCoy's wife, Lynda, was charged along with the petitioner in six counts of the superseding indictment—that is, Counts Three, Four, Five, Six, Seven, and Eight—with sale and delivery of firearms without making required records and making of false entry in records by federally licensed dealer, in violation of 18 U.S.C. §§ 922(b)(5) and 922(m). (*See id.* at 2-5.)

The McCoys elected to exercise their constitutional right to trial by jury, U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed[.]"), and this case was tried to a jury on March 15-18, 2010 (*see* Doc. 58, at 1). At the close of the government's case on March 16, 2010, McCoy's retained attorney, Robert Clarke, Esquire, made a motion for directed verdict of acquittal as to each of the eleven counts he was charged with violating and his wife's retained counsel, Jeff Deen, Esquire, also made a motion for judgment of acquittal as to all counts of the superseding indictment in which she was named. (*See* Doc. 92, T.T. 424-426.) The Court heard oral argument on the defendants' motions for judgment of acquittal and took the matter under advisement overnight. (*See id.* at 424-431.) On the morning of March 17, 2010, the Court denied petitioner's motion for judgment of acquittal but granted his wife's motion for judgment of acquittal as to Counts 3, 4, 7 and 8. (*Id.* at 436.) Therefore, the government's case against Lynda McCoy went to the jury only with respect to Counts 5 and 6. (*See id.*)

The jury in this matter began their deliberations at 11:15 a.m. on March 17, 2010,

and recessed for the day at 4:35 p.m. (*Id.* at 497.) The jury resumed their deliberations on March 18, 2010 at 8:30 a.m. and a half hour later passed a question to the CSO, which was immediately presented to the Court. (*Id.* at 500.) The question consisted of three parts; the Court skipped the first two parts because he felt that those parts could be easily resolved[2] and focused his discussion with counsel on the third part of the question: "Juror asked retired judge, whom he is acquainted with, 'what is reasonable doubt.' He never stated any facts of case." Government's Exhibit 1, at 1.

When Judge Steele initially spoke with counsel about the juror issue, he suggested that he could bring the juror in and question him without getting into his impression about the facts of the case and if this juror could set aside what he was told, the other jurors could be questioned to see if they could set aside what he told them or, alternatively, the wayward juror could be dismissed "for violating the Court's instructions and proceed with a jury of 11." (Doc. 92, T.T. 500-501 & 501.) The discussion at this point in time took it for granted that the Court would have to make inquiry of the other jurors regarding what the juror referenced in the question told them, as it is clear that all involved believed the wayward juror told the other jurors (or at least some of the other jurors) what the retired judge told him. (*See id.* at 501-504.) Ultimately, the parties and the Court agreed to bring the wayward juror into chambers and question him. (*Id.* at 504.) Based upon this questioning, it is apparent to the

---

[2]        The first two parts were, as follows: "(1) Explain counts 1, 3, 7, 5 and 9 that charges the defendant violated Section 922(b)(5). Does this mean the defendant filled out the form 4473 incorrectly or falsified it by not putting the actual buyer on the form. (2) Define 'purchaser' of sell." *See* Government's Exhibit 1, at 1. Ultimately, the Court responded to these two parts of the question as follows: "No further instructions can be given. You must apply the Court's instructions and consider them in light of the evidence." *Id.* at 2.

undersigned, as it was to Chief Judge Steele on March 18, 2010, that everyone's earlier assumption was confirmed and that Juror Odom took the information he received from the retired judge to the other members of the jury. (*See id*. at 507 ("THE COURT: Okay. And did you take that information to the other jurors at the beginning of – MR. ODOM: That's the reason they knew it, because I says, y'all wouldn't tell me, but I says, I called because I wanted to know myself. And of course, the guy, I didn't let him explain, I guess he could explain better reasonable doubt but I got the general idea that – and I think you told me, but I just didn't remember quietly that if you have reasonable doubt, you vote guilty or, you know, innocent or whatever.").)[3]

After Juror Odom was excused from chambers, the following discussion occurred:

> THE COURT:      I guess the first question is do we keep him or discharge him based on, you know, his answers or the fact that he violated the Court's instructions? And then if we discharge him, then the question is can we proceed, assuming that the other 11 jurors say we can set aside what he told us.

> MR. DEEN:      I'm going to tell you, he didn't talk about the facts of the case.

> MS. O'BRIEN:      But he violated the judge's charge, and so you can't trust what he says on something else when the instructions were very clear and he violated it. So, I mean, I don't think he can continue to deliberate.

> Now, the other issue is whether we go with 11 or not, but I don't think he can continue to deliberate.

> THE COURT:      Bob, you got an impression or opinion?

---

[3]      Bob Clark certainly testified at the evidentiary hearing that this is the proper import of Odom's statements, that is, that Odom shared with his fellow jurors what the retired judge told him about reasonable doubt.

4

> MR. CLARK: Not really. I mean, you know, Michele makes a good argument, you know. You've got this guy that's running out of bounds. I mean, what do we do? We let him run out of bounds? I mean, you know, I think he says he can put it aside. Whether he can or can't, I don't know. But like Michele says, he's running –
>
> THE COURT: Well, you know, he's, as you said, out of bounds, or another term may be a loose cannon.
>
> MR. CLARK: He is a loose cannon. I thought we had passed that. I thought that was a given.
>
> THE COURT: Okay. Well, without going through the, you know, the tedious process of bringing the other 11 jurors in here, is it possible if Mr. Odom is discharged to try this case with the other 11, assuming that they say –
>
> MR. CLARK: We would have to take –
>
> THE COURT: Yeah, and I want you to do that.
>
> MR. CLARK: You know, I won't have any objection to it because I want to get it over with.
>
> THE COURT: Okay. Talk to your clients right now before we do all this other. . . .

(*Id.* at 512-514.)

During the evidentiary hearing on March 19, 2013, Bob Clarke, Esquire, testified that he informed McCoy during the break that a juror had been called on the carpet by the Court for speaking to a former probate judge about the meaning of reasonable doubt and that the defendant[4] had to decide whether he wanted the case to go to the remaining 11 jurors or whether he wanted the Court to declare a mistrial.[5] Clark

---

[4]    There was no discussion between Clark and McCoy about the wayward juror having shared that information with the other jurors.

[5]    Although Jeff Deen, Esquire, and his client, Lynda McCoy, were several yards removed from Clarke and Larry McCoy, Deen testified that he and Lynda simply turned to listen to Clark's discussion with her husband. Deen confirmed that Clark told McCoy that one
(Continued)

5

informed McCoy that he liked the present jury, that it was a good one and that he would go forward with his case before the present jury but that it was ultimately McCoy's decision alone about whether to proceed. The two men discussed the fact that if a mistrial was declared the case would have to be retried and that additional attorney's fees would be incurred upon a retrial. Thereafter, the McCoys had a short conversation outside the presence of their attorneys and then returned to inform retained counsel that they desired to proceed with 11 jurors. Indeed, petitioner's evidentiary hearing testimony effectively confirmed Deen's testimony that he and his wife stepped away to speak privately and that when they rejoined counsel he spoke for the couple and informed counsel to go ahead with 11 jurors.[6] It was McCoy's unequivocal hearing testimony that he could not recall telling Clark that he could not afford a retrial[7] and it is also clear that one factor compelling the admittedly joint decision to go with 11 jurors was the ordeal of the trial itself and the emotional toll it had taken on the couple.

---

of the jurors had contacted a retired judge and that the Court could declare a mistrial or they could go forward with 11 jurors. Deen too liked the jury and advised his client to go forward with the remaining 11 jurors.

[6]   The undersigned **REJECTS** the suggestion of habeas counsel that Clark should have advised McCoy that he "could accept the Court's offer of a mistrial while Lynda McCoy could elect to proceed[]" (Doc. 121, at 2), principally because this suggestion does not correlate with the fact that the McCoys were making a joint decision in this regard and desired an end to the emotional and physical toll the trial was taking on them. In addition, this argument need fail because McCoy offers nothing establishing that the government (or the court) would have agreed to a mistrial with respect to one defendant while allowing the case against the co-defendant to be decided by the jury of 11.

[7]   Thus, the undersigned has no occasion to address the argument of petitioner's § 2255 counsel that trial counsel learned from McCoy that he could not pay for a second trial and, thereafter, failed to inform him that an attorney could be appointed to represent him at a second trial.

When counsel returned to chambers, the following occurred:

THE COURT:         Got the dice?

MR. CLARK:         Yeah. Tentatively yes, that's what we want to do is roll the dice, except we want to understand how we are going to proceed from here as far as the other jurors.

THE COURT:         I'm going to interview them individually. . . . You tell me. What do you think is a good plan?

MR. CLARK:         I don't really know. I really don't. I mean, you've got to get rid of him. I think you've got to get rid of him.

THE COURT:         Yeah.

MR. CLARK:         You know, like Michele said, you know, he's tainted, we know that. Now, has he tainted the rest of them or are we going to taint the rest of them oursel[ves]?

THE COURT:         Well, you mean, don't question them?

MR. DEEN:         That's fine with me if you don't question them.

.     .     .

MR. CLARK:         Have you heard that he talked to a judge? I mean, he told them that, but what effect is him talking to a judge going to have on you? . . .

THE COURT:         Well, I'm happy to do it that way. I just want to make sure that that's what you want to do. I mean, it will save us a lot of time if we don't have to go through each juror individually and ask them those questions. Is that okay with the Government?

MS. O'BRIEN:         Yes, sir.

THE COURT:         Just toss Mr. Odom and send the rest of the 11 back in to start deliberating?

MS. DAVIS:         Yes, sir.

MR. CLARK:         I think so. Well, you might want to ask them—

MS. DAVIS:         Okay[,] Bob, you said don't ask them anything. Now, you're backtracking.

7

MS. O'BRIEN:       You pick one way or the other. We're either asking them or we're not asking them.

MR. CLARK:       I was making a suggestion. Lord, I guess this means the wedding is off.

MS. DAVIS:       You're right.

MR. CLARK:       Don't ask them nothing, Judge. Simply tell them that if they don't reach a verdict before noon . . . .

THE COURT:       All right. What you want to do, Bob?

MR. CLARK:       Just roll the dice, send them back and tell them to . . . get it over [with].

.       .       .

THE COURT:       But let me make sure the record is clear. Everyone is in agreement that –

MR. DEEN:       On behalf of Defendant Lynda McCoy, we are willing for the 11 to decide and that no further questions be asked of the remaining jurors.

THE COURT:       Okay. Bob?

MR. CLARK:       I take the same position for Larry McCoy.

THE COURT:       And the Government?

MS. O'BRIEN:       Same for the Government.

MS. DAVIS:       Same for the Government.

(T.T. 514, 515-516 & 516.)  And while it is clear that neither Clark nor Deen spoke to the McCoys about whether the other 11 jurors should be questioned about what Juror Odom told them, it is also clear that the options to be presented to the McCoys after questioning the remaining 11 jurors would be the same, a mistrial or proceed with the eleven. Deen frankly admitted during the March 19, 2013 hearing that he did not care what Odom told the others because a judgment of acquittal in favor of his client had

8

been granted with respect to several counts of the indictment and he wanted a jury he liked (that is, the jury of 11) to consider the remaining counts against Ms. McCoy.[8] As for Clark, he also liked the jury and, as confirmed by the trial transcript, felt that questioning the other jurors could be more damaging to his client by emphasizing any extrinsic information relayed to them by Odom.[9]

Deen's affinity for the jury was confirmed, Lynda McCoy being acquitted of all remaining counts of the superseding indictment in which she was named. (Doc. 92, T.T. 519 ("We, the jury, find the Defendant, Lynda McCoy, not guilty as charged in Count 5 of the superseding indictment. . . . We, the jury, find the Defendant, Lynda McCoy, not guilty as charged in Count 6 of the superseding indictment."); *compare id. with* T.T. 522 ("THE COURT: . . . I will accept the verdict of the jury. Ms. McCoy, you are discharged based on the jury's verdict.").) And while Clark's affinity for the jury was not as completely confirmed, it was partially confirmed as petitioner was acquitted of four of the eleven counts of the superseding indictment brought against him. (*See id.* at 518 & 519 ("We, the jury, find the Defendant, Larry Dale McCoy, not guilty as charged in Count 1 of the superseding indictment. We, the jury, find the Defendant, Larry Dale

---

[8]        Indeed, as reflected by his evidentiary hearing and confirmed by his in-chambers comments on March 18, 2010, Deen would have fought to keep Odom on the jury had the Court reached the conclusion that the case had to be decided by all jurors or a mistrial declared. (*Compare* Doc. 92, T.T. 512 ("MR. DEEN: I'm going to tell you, he [Juror Odom] didn't talk about the facts of the case.") *with id.* at 516 ("MR. DEEN: On behalf of Defendant Lynda McCoy, we are willing for the 11 to decide and that no further questions be asked of the remaining jurors.").)

[9]        This is compelling testimony particularly given the clear indication in the trial transcript that on the first day of deliberations Odom's fellow jurors did not feel they needed further instruction from the Court regarding reasonable doubt. (*See* Doc. 92, T.T. 506 ("MR. ODOM: . . . I just wanted to know what reasonable doubt. I tried to get **them** to ask yesterday to get a definition, but they wouldn't, you know." (emphasis supplied).)

McCoy, not guilty as charged in Count 2 of the superseding indictment. . . . We, the jury, find the Defendant, Larry Dale McCoy, not guilty as charged in Count 5 of the superseding indictment. We, the jury, find the Defendant, Larry Dale McCoy, not guilty as charged in Count 6 of the superseding indictment.").)[10]

On June 30, 2010, McCoy was sentenced to concurrent 51-month terms of imprisonment. (Doc. 65.) McCoy filed written notice of appeal on July 2, 2010 (Doc. 66) and by unpublished *per curiam* opinion entered on May 9, 2012, the Eleventh Circuit Court of Appeals affirmed McCoy's convictions and sentence. (Doc. 95.) This opinion reads, in relevant part, as follows:

> Larry Dale McCoy appeals his convictions and total fifty-one-month sentence for knowing and willful sale of firearms without making required records, in violation of 18 U.S.C. § 922(b)(5); making false entry in records by a Federal Firearms Licensee, in violation of 18 U.S.C. § 922(m); and sale of a firearm and ammunition to a convicted felon, in violation of 18 U.S.C. § 922(d)(1). First, McCoy argues that he was denied his Sixth Amendment right to an impartial jury. Second, McCoy argues that he was denied his Sixth Amendment right to effective assistance of counsel. Third, McCoy argues that the government failed to prove the charges in the superseding indictment beyond a reasonable doubt.

> .      .      .

> I.

> We review issues first raised on appeal under a plain error standard. United States v. Chisholm, 73 F.3d 304, 307 (11th Cir. 1996). However, we are precluded "from reviewing an issue raised on appeal if it has been waived through the doctrine of invited error." United States v. Brannan, 562 F.3d 1300, 1306 (11th Cir. 2009) (emphasis in original). The doctrine of invited error applies when a party induces or invites the district court into making an error, particularly where it "is not clear that the defendant was prejudiced thereby." United States v. Lewis, 524 F.2d

---

[10]    Had the McCoys opted for a mistrial, of course, petitioner would have been retried on all eleven counts of the superseding indictment and Lynda McCoy on the two counts on which the trial court refused to enter a judgment of acquittal.

991, 992 (5th Cir. 1975). We have held that the doctrine of invited error applies to at least some communications with a jury in deliberations. United States v. Cook, 586 F.2d 572, 578 (5th Cir. 1978) (observing that the defendant could not complain where he approved the court's note to a deadlocked jury urging them to continue deliberations).

Here, McCoy invited any error regarding the court's decision not to further investigate the jury's potential prejudice. On appeal, McCoy broadly characterizes the issue as whether defense counsel could waive McCoy's right to an impartial jury, but a closer review of McCoy's allegations reveals that the issue here is more limited: whether McCoy's counsel could consent to the court's limited inquiry in determining that the jury was in fact impartial. Although the record does not detail any communication between McCoy and his counsel on this issue, McCoy's counsel indicated that McCoy consented to dismissing Juror Odom and continuing with eleven jurors. McCoy's counsel then suggested that the court perhaps should proceed without interviewing the remaining jurors in order to avoid emphasizing any extrinsic information, and the government and the court agreed.

Even assuming that McCoy's counsel could not invite error on this issue, the district court did not plainly err in concluding that the remaining jurors were not unfairly prejudiced by any information potentially shared by Juror Odom. McCoy did not assert this objection during the court's discussion of Juror Odom and, on appeal, McCoy cites no authority establishing that the district court's decision to defer to counsel's wishes and to interview and dismiss only Juror Odom would amount to plain error.

II.

We generally do not consider ineffective assistance of counsel claims on direct appeal because the record typically is insufficiently developed, especially where the claim was not raised at the district court. See United States v. Bender, 290 F.3d 1279, 1284 (11th Cir. 2002). The Supreme Court has recognized that there may be rare cases "in which trial counsel's ineffectiveness is so apparent from the record" that the issue may be considered on direct appeal. Massaro v. United States, 538 U.S. 500, 508, 123 S.Ct. 1690, 1696 (2003). However, this kind of claim is more appropriately resolved in a habeas corpus proceeding, where an evidentiary hearing may be held. United States v. Andrews, 953 F.2d 1312, 1327 (11th Cir. 1992).

Here, the record does not indicate that McCoy's counsel was so apparently and exceptionally ineffective as to warrant review on direct appeal. McCoy did not raise below the issue of ineffective assistance of counsel, and there was no opportunity for the district court to develop the

11

factual record for consideration on appeal. We therefore decline to address this issue.

III.

We review <u>de novo</u> a district court's denial of judgment of acquittal on sufficiency of the evidence grounds. <u>United States v. Browne</u>, 505 F.3d 1229, 1253 (11th Cir. 2007). We "must view the evidence in the light most favorable to the government and decide whether a reasonable fact finder could have reached a conclusion of guilt beyond a reasonable doubt." <u>United States v. Herrera</u>, 931 F.2d 761, 762 (11th Cir. 1991). We will not disturb a jury verdict "if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt." <u>Id</u>. The "evidence need not be inconsistent with every reasonable hypothesis except guilt, and the jury is free to choose between or among the reasonable conclusions to be drawn from the evidence presented at trial." <u>United States v. Hernandez</u>, 896 F.2d 513, 517 (11th Cir. 1990).

In order to convict McCoy on Counts Three, Seven, and Nine, the government must prove that: (1) McCoy was a federally licensed dealer, (2) who sold a firearm to a person, and (3) failed to keep the required records. 18 U.S.C. § 922(b)(5).

In order to convict McCoy on Counts Four, Eight, and Ten, the government must prove: (1) McCoy was a federally licensed dealer, (2) who knowingly falsified or knowingly failed to enter or maintain required records. <u>Id</u>. § 922(m).

Finally, in order to convict McCoy on Count Eleven, the government must prove that: (1) McCoy sold a firearm or ammunition, (2) to a person indicted for or convicted of a crime punishable by imprisonment for a term exceeding one year, (3) of which McCoy knew or had reasonable cause to believe. <u>Id</u>. § 922(d)(1).

Here, the district court did not err in denying a judgment of acquittal because the evidence, viewed in the light most favorable to the government, adequately supports each count of conviction. The parties stipulated that McCoy was a federally licensed firearms dealer. Despite McCoy's arguments to the contrary, the testimony at trial established that he was involved in all three transactions that led to his convictions. He personally sold a firearm to Blakely and allowed Henderson to fill out the paperwork in her name; McCoy personally suggested that Smith purchase a firearm and put the paperwork in Tinsley's name; and McCoy explicitly gave approval to Bridges to purchase a firearm and put the paperwork in Frazier's name. These acts are sufficient to support the convictions on Counts Three, Four, Seven, Eight, Nine, and Ten. <u>See id</u>. § 922(b)(5); <u>id</u>. §

12

922(m); <u>United States v. Nelson</u>, 221 F.3d 1206, 1209 (11th Cir. 2000).

> As for Count Eleven, testimony at trial established that Smith told McCoy that Smith probably had an unresolved drug charge. McCoy also knew that Smith's application to purchase a firearm had been denied by the FBI. Knowing this, McCoy still allowed Smith to purchase a firearm. This evidence is adequate to support the conviction on Count Eleven.

(*Id*. at 2 & 2-7.)[11]

McCoy filed his motion to vacate, pursuant to 28 U.S.C. § 2255, on June 5, 2012. (Doc. 97, at 13 (date placed in the prison mailing system); *see also* Doc. 99 (July 9, 2012 supplement).) As previously indicated, that petition was amended by appointed counsel on January 11, 2013. (Doc. 121.) Based upon that amendment, and the comments of counsel during the evidentiary hearing on March 19, 2013, the sole issue before the undersigned for determination is whether McCoy's trial attorney, Bob Clark, provided constitutionally ineffective assistance by failing to sufficiently apprise McCoy of the full extent of juror misconduct by informing him that "the dismissed juror's communications with the remaining jurors may have tainted them" (Doc. 121, at 2) and by thereafter waiving the right to question the 11 deliberating jurors (and, thus, according to petitioner, his right to a fair and impartial jury) without consulting with the petitioner about requesting a mistrial.

## CONCLUSIONS OF LAW

Section 2255 reads, in relevant part, as follows: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence,

---

[11]     That opinion issued as mandate on June 12, 2012. (Doc. 96.)

or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

In this instance, McCoy contends that constitutionally ineffective assistance of counsel entitles him to the relief afforded by 28 U.S.C. § 2255. In order to establish a claim of ineffective assistance of counsel, a petitioner is required to show (1) that his attorney's representation fell below "an objective standard of reasonableness" and (2) that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *see also Jones v. United States*, 478 Fed.Appx. 536, 539-540 (11th Cir. Sept. 23, 2011) ("To make a successful claim of ineffective assistance of counsel, a defendant must show: (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense."). [12] "The burden of persuasion is on a section 2255 petitioner to prove, by a preponderance of the competent evidence, both that counsel's performance was unreasonable, and that []he was prejudiced by that performance." *Demar v. United States,* 228 Fed.Appx. 940, 950 (11th Cir. Jun. 21, 2007) (quotation marks, brackets and citations omitted); *see also Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland*

---

[12]     "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

claim, and both prongs must be proved to prevail."), *cert. denied sub nom. Johnson v.*

*Nagle*, 535 U.S. 926, 122 S.Ct. 1295, 152 L.Ed.2d 208 (2002).[13]

>   To meet the deficient performance prong of the *Strickland* test, the defendant must show that counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment. The proper measure of attorney performance is reasonableness under prevailing professional norms, and judicial scrutiny of counsel's performance must be highly deferential. There is a strong presumption that counsel's conduct fell within the range of reasonable professional assistance. Counsel is not incompetent so long as the particular approach taken might be considered sound trial strategy.

*Adamson v. United States,* 288 Fed.Appx. 591, 594 (11th Cir. July 29) (internal citations

and quotation marks omitted), *cert. denied*, 555 U.S. 1010, 129 S.Ct. 526, 172 L.Ed.2d 385

(2008); *see also Brooks v. United States*, 248 Fed.Appx. 77, 80 (11th Cir. Sept. 7, 2007) ("The

proper measure of attorney performance is reasonableness under prevailing

professional norms. Counsel is strongly presumed to have rendered adequate assistance

and to have exercised reasonable professional judgment. Counsel's performance is

deficient if counsel made errors so egregious that he was not functioning as the counsel

guaranteed under the Sixth Amendment." (internal quotation marks and citations

omitted)), *cert. denied*, 555 U.S. 867, 129 S.Ct. 157, 172 L.Ed.2d 115 (2008); *see Jones, supra,*

478 Fed.Appx. at 540 ("In determining whether counsel gave deficient assistance under

*Strickland*, the test for reasonableness is not whether counsel could have done

something more or different; instead, the movant must show that counsel's

---

[13]   It is proper in considering claims made by a federal prisoner under § 2255 to look for guidance from cases discussing claims raised by state prisoners under 28 U.S.C. § 2254. *See Hagins v. United States,* 267 F.3d 1202, 1205 (11th Cir. 2001) (citing *Holladay v. Haley,* 209 F.3d 1243 (11th Cir. 2000)), *cert. denied*, 537 U.S. 1022, 123 S.Ct. 545, 154 L.Ed.2d 432 (2002).

performance fell outside the wide range of professionally competent assistance." (internal quotation marks and bracket omitted; citation omitted)).

> To establish prejudice under *Strickland*, the movant must show more than that the error had some conceivable effect on the outcome of the proceeding. Rather, the movant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Jones, supra,* 478 Fed.Appx. at 540 (quotation marks, brackets and citations omitted). The undersigned appreciates McCoy to be making the following prejudice argument in this case: But for Clark's unprofessional failure to inform him that the other eleven jurors could have been questioned about the dismissed juror's "reasonable doubt" comments to them, he would have requested a mistrial and retrial of the charges set forth in the superseding indictment rather than allowing the eleven jurors to decide his fate. (*See* Doc. 121, at 3.)[14]

---

[14]    To the extent petitioner argues that prejudice should be presumed, that argument is **REJECTED**. *Compare Darden v. United States,* No. 10-15640, __ F.3d 925, 926-927 & 932 (11th Cir. Feb. 12, 2013) (holding that defense counsel's failure to consult with the defendant about his concession strategy—that is, counsel's decision to concede his client's guilt with respect to one robbery to save credibility when defending the defendant against another robbery—did not trigger *Cronic*'s presumption-of-prejudice standard, inasmuch as the dereliction of the duty to consult "does not automatically prejudice the defendant.") *with Bell v. Cone,* 535 U.S. 685, 696-698, 122 S.Ct. 1843, 1851-1852, 152 L.Ed.2d 914 (2002) ("When we spoke in *Cronic* of the possibility of presuming prejudice based on an attorney's failure to test the prosecutor's case, we indicated that the attorney's failure must be complete. We said 'if counsel *entirely* fails to subject the prosecution's case to meaningful adversarial testing.' Here, respondent's argument is not that his counsel failed to oppose the prosecution throughout the sentencing proceeding as a whole, but that his counsel failed to do so at specific points. For purposes of distinguishing between the rule of *Strickland* and that of *Cronic*, this difference is not of degree but of kind. The aspects of counsel's performance challenged by respondent—the failure to adduce mitigating evidence and the waiver of closing argument—are plainly of the same ilk as other specific attorney errors we have held subject to *Strickland*'s performance and prejudice components." (internal citations omitted; emphasis in original)); *see Florida v. Nixon,* 543 U.S. 175, 190 & 192, 125 S.Ct. 551, 562 & 563, 160 L.Ed.2d 565 (2004) ("We illustrated just how infrequently the 'surrounding circumstances [will] justify a presumption of ineffectiveness' in *Cronic* itself. In that case, we reversed a Court of Appeals ruling that ranked as prejudicially (Continued)

Given the two-prong nature of the test for adjudicating ineffective-assistance-of-counsel claims, it can come as no surprise that "'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" *Johnson, supra,* 256 F.3d at 1176 (citation omitted). When applying the *Strickland* standard, it is clear that courts "are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary,* 141 F.3d 1018, 1023 (11th Cir. 1998) (citation omitted), *cert. denied sub nom. Oats v. Moore,* 527 U.S. 1008, 119 S.Ct. 2347, 144 L.Ed.2d 243 (1999); *see also Adamson, supra,* 288 Fed.Appx. at 594 ("The defendant must satisfy both prongs of this test to show a Sixth Amendment violation; if the defendant fails to demonstrate one of these prongs sufficiently, we do not need to address the other."); *Butcher v. United States,* 368 F.3d 1290, 1293 (11th Cir. 2004) ("[O]nce a court decides that one of the requisite showings has not been made it need not decide whether the other one has been.").

The undersigned now considers McCoy's claim of alleged ineffective assistance of counsel and concludes that petitioner has established neither prong of *Strickland*'s two-pronged test. First, McCoy simply has not overcome the strong presumption that Bob Clark rendered adequate assistance and exercised reasonable professional judgment in deciding not to have the Court question the remaining eleven jurors

---

inadequate the performance of an inexperienced, underprepared attorney in a complex mail fraud trial. . . . [I]n a capital case, counsel must consider in conjunction both the guilt and penalty phases in determining how best to proceed. When counsel informs the defendant of the strategy counsel believes to be in the defendant's best interest and the defendant is unresponsive, counsel's strategic choice is not impeded by any blanket rule demanding the defendant's explicit consent. Instead, if counsel's strategy, given the evidence bearing on the defendant's guilt, satisfies the *Strickland* standard, that is the end of the matter; no tenable claim of ineffective assistance would remain.")

regarding any extrinsic information relayed to them by Juror Odom. Of course, it cannot be forgotten that when Clark made this decision he had returned to chambers with his client's decision to proceed to verdict with the eleven remaining jurors as opposed to having the Court declare a mistrial, the same two choices that petitioner would have faced had the remaining eleven jurors been questioned. Moreover, Clark was not alone in deciding to proceed to verdict without questioning the remaining jurors and not have his client weigh-in on such decision as his co-counsel, Jeff Deen, was adamant that the remaining eleven jurors decide the case and, to this end, did not inform his client, Lynda McCoy, that Juror Odom may have shared extrinsic "reasonable doubt" information with his fellow jurors. Finally, Clark had a jury he liked (as did Deen) and he did not want to potentially "damage" the remaining eleven jurors by emphasizing the extrinsic information injected by Odom. Clark's "instincts," or perhaps even strategy, in this regard were the antithesis of unsound, particularly in light of the other jurors' refusal to request an additional "reasonable doubt" charge from the court on March 17, 2010. (*See* Doc. 92, T.T. 506 ("I tried to get them to ask yesterday to get a definition [of reasonable doubt], but they wouldn't, you know.").) Accordingly, under the circumstances, Bob Clark, Esquire, was functioning as counsel guaranteed by the Sixth Amendment (as was Jeff Deen) when agreement was reached in chambers to not question the remaining eleven jurors about any extrinsic information shared with them by Juror Odom.

McCoy has also not satisfied his burden of establishing prejudice. McCoy contends that but for Clark's unprofessional failure to inform him that the other eleven jurors could have been questioned about the dismissed juror's "reasonable doubt" comments to them, he would have requested a mistrial (presumably through Clark). At

the outset, the undersigned cannot agree that this is the proper measure of prejudice in this case;[15] instead, because the ultimate focus of prejudice is whether the result of the proceeding was fundamentally unfair or unreliable, *see, e.g., Lockhart v. Fretwell*, 506 U.S. 364, 369-370, 113 S.Ct. 838, 842-843, 122 L.Ed.2d 180 (1993) ("Under our decisions, a criminal defendant alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Thus, an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective. To set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." (internal quotation marks, citations and footnote omitted)), McCoy must necessarily show that the failure to question the remaining eleven jurors (and move for a mistrial) means that he "was tried by a biased jury[.]" *United States v. Bert*, 2007 WL 2500419, *5 (E.D. Cal. Aug. 30, 2007) ("[T]o show prejudice, movant must demonstrate that counsel's failure to move for a mistrial means that movant was tried by a biased jury, an inquiry ultimately focused on the movant's right to a fair trial."), *report & recommendation adopted by*, 2007 WL 4145977 (E.D. Cal. Nov. 19, 2007). Not only has McCoy failed to come forward with any evidence that the jury of eleven who adjudicated his case was biased, all evidence in existence establishes the contrary, that

---

[15]     Even if this was the proper measure of prejudice, the undersigned cannot find that petitioner has established his burden in this regard inasmuch as it is clear that petitioner's wife and her attorney wanted the jury of 11 to decide the remaining charges against her and both petitioner and his wife wanted to put the emotional toll of the trial behind them. Thus, the undersigned finds incredible McCoy's evidentiary hearing testimony that had he known Juror Odom shared extrinsic information with the other jurors that he would have insisted on a mistrial.

the jury of eleven was impartial.[16] First, as observed by the Eleventh Circuit panel in its *per curiam* opinion, "the district court did not plainly err in **concluding that the remaining jurors were not unfairly prejudiced by any information potentially shared by Juror Odom**." (Doc. 95, at 4 (emphasis supplied).) Moreover, the jury's verdict acquitting petitioner of four of the eleven counts asserted against him in the superseding indictment—and acquitting his wife, Lynda McCoy, of the two counts remaining against her—speaks volumes for the jury's impartiality and lack of bias. *Cf. United States v. Gonzalez,* 393 Fed.Appx. 661, 662 (11th Cir. Aug. 20) ("[T]he fact that the jury reached a split verdict, acquitting Gonzalez on every charge except conspiracy to commit health care fraud, supports the conclusion that the jury reached a reasoned verdict and was not influenced by any extraneous evidence that could have prejudiced Gonzalez." (internal footnote omitted; citation omitted)), *cert. denied,* ___ U.S. ___, 131 S.Ct. 846, 178 L.Ed.2d 574 (2010). Finally, petitioner's acquittal on four of eleven counts speaks well of the jury's understanding of "reasonable doubt" and the fact that it was not influenced by any extrinsic information shared by Odom, *see id.,* as does the Eleventh Circuit's determination that based upon the evidence presented by the government during the trial, the jury in petitioner's case properly found McCoy guilty

---

[16] The undersigned would be remiss in failing to note that in light of Juror Odom's statement that he could set aside what the retired judge told him about reasonable doubt and use only the instruction given by the Court (Doc. 92, T.T. 508), it is farfetched, at best, to believe that any of the remaining eleven jurors would have responded to any questioning by the Court in a different manner particularly since they had eschewed Odom's earlier request to seek a definition of reasonable doubt from the Court (*id*. at 506). Even had such questioning taken place, the Court would have been authorized to excuse Odom and allow a jury of 11 to return a verdict even without a stipulation by the parties. *See* Fed.R.Crim.P. 23(b)(3) ("After the jury has retired to deliberate, the court may permit a jury of 11 persons to return a verdict, even without a stipulation by the parties, if the court finds good cause to excuse a juror.").

of Counts Three, Four, Seven, Eight, Nine, Ten, and Eleven beyond a reasonable doubt (*see* Doc. 95, at 5-7). In short, there is absolutely nothing in this case which suggests that the jury of 11 who reached a verdict in McCoy's case was biased, or otherwise was influenced by the extrinsic information communicated to them by Juror Odom. Because McCoy has not shown that the extrinsic information communicated to the jury of 11 by Juror Odom destroyed the impartiality of the jury,[17] he has not shown he was prejudiced by trial counsel's failure to question the eleven jurors and move for a mistrial.

In consideration of the foregoing, it is recommended that the Court deny McCoy's motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255. Moreover, pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1).  A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2).  Where, as here, a habeas petition is being denied on the merits of an underlying constitutional claim, a COA should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the

---

[17]      A jury is presumed to be impartial. *See United States v. Siegelman,* 640 F.3d 1159, 1182 (11th Cir. 2011) ("We presume, however, that the jury has been impartial.").

constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000)*; see also id.* at 483-484, 120 S.Ct. at 1603-1604 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were '"adequate to deserve encouragement to proceed further."'"); *see Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether  (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'"). With respect to petitioner's ineffective-assistance-of-counsel claim raised herein, the undersigned recommends that the Court find that reasonable jurists could not debate whether McCoy's § 2255 motion to vacate should be resolved in a different manner or that any of the remaining issues presented are adequate to deserve encouragement to proceed further. Accordingly, petitioner is not entitled to a certificate of appealability.

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.  *Brightwell v. Patterson*, CA 11-0165-WS-C, Doc. 14 (Eleventh Circuit order denying petitioner's motions for a COA and to appeal IFP in a case in which this

Court set out the foregoing procedure); *see also Castrejon v. United States,* 2011 WL 3241817, *20 (S.D. Ala. June 28, 2011) (providing for the same procedure), *report & recommendation adopted,* 2011 WL 3241580 (S.D. Ala. July 29, 2011); *Griffin v. DeRosa,* 2010 WL 3943702, at *4 (N.D. Fla. Sept. 20, 2010) (providing for same procedure), *report & recommendation adopted sub nom. Griffin v. Butterworth,* 2010 WL 3943699 (N.D.Fla. Oct. 5, 2010).

## CONCLUSION

The petitioner's rights were not violated in this cause and his request to vacate, set aside or correct his sentence, as amended (*compare* Doc. 121 *with* Docs. 97 & 99), should be **DENIED**. Petitioner is not entitled to a certificate of appealability and, therefore, he is not entitled to appeal *in forma pauperis*.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 1st day of April, 2013.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.     *Objection*.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*). The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[18] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.     *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[18]     Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed.R.Civ.P. 72(b)(2).